1 | William W. Steckbauer (CA Bar No. 116262)
  | Susan M. Freedman (CA Bar No. 153331)
2 | Richard J.J. Scarola (Of Counsel, Admitted to Practice in the State of New York)
  | **SHUMAKER STECKBAUER WEINHART & SRAGOW, LLP**
3 | A Limited Law Liability Partnership
  | 300 South Grand Avenue
4 | 14th Floor
  | Los Angeles, CA 90071
5 | Telephone: (213) 229-2868
  | Facsimile: (213) 629-4520
6 |
  | *Attorneys for Defendants (not fraudulently joined)*
7 |

```
                    FILED
          CLERK, U.S. DISTRICT COURT

                      2

         CENTRAL DISTRICT OF CALIFORNIA
         BY                       DEPUTY
```

8

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

9

10

ARNOLD SIMON,

11

                                    Plaintiff,

12

                    vs.

13

WASH DEPOT HOLDINGS, INC., a
corporation; DAVID T. SMITH, an individual;
ANDREW SMITH, an individual; ROBERT
DOMINICO, an individual; THE BOSTON
GROUP, L.P., a limited partnership; and DOES 1
through 100 inclusive,

**00-12428CAS (MCx)**

Case No.

NOTICE OF
REMOVAL OF ACTION

```
ENTERED ON ICMS

    NOV 28 2000

CV
```

20 | TO THE CLERK OF THE COURT

21 | PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §1446(a) and (b), defendants hereby

22 | remove to this Court the action in the Superior Court of the State of California, County of Los

23 | Angeles, described below:

24 | *The State Court Action*

25 | 1.     On or about October 23, 2000, plaintiff filed a Complaint in the Superior

26 | Court of the State of California, County of Los Angeles, Central District, entitled *Arnold Simon v.*

27 | *Wash Depot Holdings, Inc., David T. Smith, Andrew Smith, Robert Dominico, The Boston Group,*

28 | *L.P., and DOES 1 though 100* as Case No. B C238965 (the "State Court Action"). A copy of the

```
11/22/00              12:14:04 PM
LA   1-1 ENAKADA      Receipt # 027845
======NO REFUND WITHOUT RECEIPT======
CASE #
     OO--12428

   086900    Filing Fee Civil
                        6O. OO
   510000    Special Fund F/F
                        9O. OO
===== T O T A L =======
                  1 5O. OO
   CHECK TENDERED $          $150.00

===CHECK $AOO  WITHOUT RECEIPT======
======NO REFUND
```

1   Complaint in the State Court Action is annexed as Exhibit A.

2       2.    The first date on which any of the defendants received the Complaint was

3   October 26, 2000, the date on which defendant David T. Smith was handed a copy of the

4   Complaint. None of the other defendants have been served with the Complaint (with the possible

5   exception of Wash Depot Holdings, Inc. ("Wash Depot"), to the extent plaintiff claims that service

6   upon Mr. Smith also constitutes serve upon Wash Depot, on the ground that Mr. Smith is an officer

7   or director of Wash Depot). This Notice is filed within 30 days of any of the defendants' first

8   receipt of the initial pleading, the Complaint, setting forth plaintiff's claims for relief and is timely

9   pursuant to 28 U.S.C. § 1446(b). Defendants have received no other pleading, process or order

10   relating to this action.

11       3.    Written notice of the filing of this Notice of Removal will be given promptly

12   to plaintiff and, together with a copy of this Notice of Removal of Action, will be filed with the

13   Clerk of the Superior Court of the State of California, County of Los Angeles, Central District,

14   pursuant to 28 U.S.C. § 1446(d).

15       4.    The relief sought in the Complaint is a determination that plaintiff's

16   investments in connection with defendant Wash Depot have been rescinded; an order of restitution

17   of all amounts paid by plaintiff to any of defendants; compensatory, exemplary and punitive

18   damages; treble damages; imposition of a constructive trust on the proceeds of all investments

19   made by plaintiff in defendant Wash Depot; for an accounting, and for attorneys' fees, costs and

20   pre- and post-judgment interest. Plaintiff does not seek any injunctive or other relief.

21

22                             *Basis for this Court's Jurisdiction*

23       5.    This Court has jurisdiction of this action based on diversity of citizenship in

24   accordance with 28 U.S.C. § 1332.

25       6.    Pursuant to 28 U.S.C. § 1332, this Court has diversity jurisdiction over this

26   action because it is a civil action between citizens of different states and the matter in controversy

27   exceeds $75,000 exclusive of interest and costs.

28       7.    Plaintiff has in his Complaint falsely alleged certain facts as set forth below

1  which, if true, would defeat diversity jurisdiction, but the actual jurisdictional facts, also described
2  below, make clear that diversity jurisdiction exists here.

3          8.      Plaintiff has falsely alleged in his Complaint that he is a resident of the State
4  of New York when he is in fact a resident of the State of New Jersey, residing at all relevant times
5  with his wife and children at 101 Fox Hedge, Saddle River, New Jersey, tel.: (201) 327-7648, in
6  which State his children attend school.  To the extent any of those facts are disputed by plaintiff,
7  defendants request (i) the opportunity to present evidence in their possession to prove those
8  facts and (ii) the opportunity to conduct discovery addressed to those facts in order to adduce
9  further proof of those facts.

10         9.      Defendant Wash Depot is a corporation organized and existing under the
11  laws of the State of Delaware, with its principal place of business in Massachusetts.  The Complaint
12  incorrectly alleges that Wash Depot is doing business in California.  It is not.  To the extent any of
13  those facts are disputed by plaintiff, defendants request (i) the opportunity to present evidence
14  in their possession to prove those facts and (ii) the opportunity to conduct discovery addressed
15  to those facts in order to adduce further proof of those facts.

16         10.     Defendant David T. Smith is a resident of the State of New York as is alleged
17  in the Complaint.

18         11.     Defendant Andrew Smith is a resident of the State of Connecticut, residing at
19  3 Daniel Court, Westport, Connecticut 06880.  The Complaint incorrectly alleges that Andrew
20  Smith is, and at all relevant times was, a resident of California.

21         12.     Defendant Robert DiMinico, incorrectly referred to in the Complaint as
22  Robert Dominico, and defendant The Boston Group, L.P. (the "Boston Group"), have been
23  fraudulently joined in this case in order to attempt falsely to defeat diversity jurisdiction.  Any
24  claims alleged by plaintiff against Robert DiMinico and the Boston Group are, upon information
25  and belief, governed by a customer arbitration agreement requiring arbitration before the NASD of
26  any such claims, and plaintiff has no cause of action against Robert DiMinico or the Boston Group
27  in this Court or in the California State Court.  Thus it is a sham for plaintiff to have named those
28  parties as defendants and they have been fraudulently joined as defendants in order to defeat

- 3 -

1   diversity jurisdiction, and their citizenship should be disregarded for purposes of determining

2   diversity jurisdiction and the other defendants' rights to remove this case to this Court. To the

3   extent any of those facts are disputed by plaintiff, defendants request (i) the opportunity to

4   present evidence in their possession to prove those facts and (ii) the opportunity to conduct

5   discovery addressed to those facts in order to adduce further proof of those facts.

6          13.     The Doe defendants are not alleged to have any residence or citizenship

7   and also are fictitious defendants, and their citizenship should be disregarded for purposes of

8   determining diversity jurisdiction and the other defendants' rights to remove this case to this Court.

9          14.     Accordingly, plaintiff resides in and is a citizen of New Jersey and each of

10   the defendants who are not fraudulently joined or named by fictitious names are residents or

11   citizens of States other than New Jersey, and none of those defendants are residents of California,

12   hence, there is complete diversity of citizenship among the true parties to this case and this case

13   may be removed to this Court.

14          15.     Plaintiff seeks damages in an amount in excess of $75,000, exclusive of

15   interest and costs.

16          16.     Pursuant to 28 U.S.C. § 1441(b), removal to this Court is proper because

17   this Court has diversity jurisdiction over this action.

18   Dated: November 22, 2000

19                          SHUMAKER STECKBAUER WEINHART

20                          &amp; SRAGOW LLP

21                    By

22                        William W. Steckbauer

                               *Attorneys for Defendants (not*

23                              *fraudulently joined)*

24

25

26

27

28

**Exhibit  A**

# SUMMONS
*(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:** *(Aviso a Acusado)*
WASH DEPOT HOLDINGS, INC., a corporation; DAVID T.
SMITH, an individual; ANDREW SMITH, an individual;
ROBERT DOMINICO, an individual; THE BOSTON GROUP,
L.P., a limited partnership; and DOES 1 through
100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(A Ud. le está demandando)*
ARNOLD SIMON, an individual,

| | |
|---|---|
| You have **30 CALENDAR DAYS** after this summons is served on you to file a typewritten response at this court. | *Después de que le entreguen esta citación judicial usted tiene un plazo de 30 DIAS CALENDARIOS para presentar una respuesta escrita a máquina en esta corte.* |
| A letter or phone call will not protect you; your typewritten response must be in proper legal form if you want the court to hear your case. | *Una carta o una llamada telefónica no le ofrecerá protección; su respuesta escrita a máquina tiene que cumplir con las formalidades legales apropiadas si usted quiere que la corte escuche su caso.* |
| If you do not file your response on time, you may lose the case, and your wages, money and property may be taken without further warning from the court. | *Si usted no presenta su respuesta a tiempo, puede perder el caso, y le pueden quitar su salario, su dinero y otras cosas de su propiedad sin aviso adicional por parte de la corte.* |
| There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). | *Existen otros requisitos legales. Puede que usted quiera llamar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de referencia de abogados o a una oficina de ayuda legal (vea el directorio telefónico).* |

The name and address of the court is: *(El nombre y dirección de la corte es)*
LOS ANGELES SUPERIOR COURT
111 NORTH HILL STREET
LOS ANGELES, CALIFORNIA 90010

CENTRAL DISTRICT

**CASE NUMBER** *(Número del Caso)*
H C238965

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)*
GARY S. LICENBERG, SBN 123058     (310) 201-2100     (310) 201-2100
EKWAN E. RHOW, SBN 174604
Bird, Marella, Boxer & Wolpert, APC
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067-2561

DATE: OCT 23 2000    **John A. Clarke** Clerk, by _____ , Deputy
*(Fecha)*             *(Actuario)*       **M. GASTELUM** *(Delegado)*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [ ] on behalf of *(specify):*

    under:    [ ] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
               [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
               [ ] CCP 416.40 (association or partnership)     [ ] CCP 416.90 (individual)
               [ ] other:
4. [ ] by personal delivery on *(date):*

*(See reverse for Proof of Service)*
**SUMMONS**



Form Adopted by Rule 982
Judicial Council of California
982(a)(9) [Rev. January 1, 1984]
Mandatory Form

CCP 412.20



ORIGINAL

1 | GARY S. LINCENBERG - State Bar No. 123058
JASON D. KOGAN - State Bar No. 107707
2 | EKWAN E. RHOW - State Bar No. 174604
BIRD, MARELLA, BOXER & WOLPERT
3 | A Professional Corporation
1875 Century Park East, 23rd Floor
4 | Los Angeles, CA 90067-2561
Telephone: (310) 201-2100
5 | Facsimile: (310) 201-2110

6 | Attorneys for Plaintiff

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | FOR THE COUNTY OF LOS ANGELES

10

11 | ARNOLD SIMON, an individual,

12 |     Plaintiffs,

13 |     vs.

14 | WASH DEPOT HOLDINGS, INC., a corporation; DAVID T. SMITH, an
15 | individual; ANDREW SMITH, an individual; ROBERT DOMINICO, an
16 | individual; THE BOSTON GROUP, L.P., a limited partnership; and
17 | DOES 1 through 100 inclusive.

18 |     Defendants.

ORIGINAL FILED

OCT 2 3 2000

LOS ANGELES
SUPERIOR COURT

CASE NO.   B C238965

Assigned to The Honorable —
Dept.

COMPLAINT FOR:

(1) FRAUD;
(2) GROSS NEGLIGENCE;
(3) NEGLIGENT
MISREPRESENTATION;
(4) CONSTRUCTIVE FRAUD;
(5) BREACH OF FIDUCIARY DUTY;
(6) NEGLIGENCE;
(7) VIOLATION OF CALIFORNIA
CORPORATIONS CODE § 25401;
(8) VIOLATION OF THE RACKETEER
INFLUENCED AND CORRUPT
ORGANIZATIONS ACT;
(9) VIOLATION OF CALIFORNIA
BUSINESS & PROFESSIONS
CODE § 17200;
(10) CIVIL CONSPIRACY;
(11) IMPOSITION OF A
CONSTRUCTIVE TRUST; AND
(12) ACCOUNTING

DEMAND FOR JURY TRIAL

1
COMPLAINT

2632.2:97142.1

Plaintiff Arnold Simon alleges as follows:

### JURISDICTION

1. This Court has jurisdiction over this action because each defendant, including Does 1 through 100, has either been doing business in the State of California within the time period relevant to the causes of action stated herein or is, or at all relevant times was, a resident of the State of California.

### THE PARTIES

2. Plaintiff Arnold Simon ("Simon") is an individual residing in New York City, New York.

3. Defendant Wash Depot Holdings, Inc. ("Wash Depot") is, and at all relevant times was, a Delaware corporation doing business in California.

4. Defendant David T. Smith ("David Smith") is an individual residing in New York City, New York. At all relevant times, David Smith was a resident of Los Angeles, California. David Smith is, and at all relevant times was, the chief executive officer and chairman of the board of directors of Wash Depot.

5. Defendant Andrew F. Smith ("Andrew Smith") is, and at all relevant times was, an individual residing in Los Angeles, California. Andrew Smith is, and at all relevant times, was an officer and director of Wash Depot.

6. The Boston Group, L.P. ("The Boston Group") is, and at all relevant times was, a limited partnership doing business in California.

7. Robert A. Dominico ("Dominico") is, and at all relevant times was, an individual residing in Los Angeles, California. A

2

COMPLAINT

2692.2:97142.1

1   all relevant times, Dominico was a broker at The Boston Group.

2       8.   The true names and capacities of defendants Does 1
3   through 100, inclusive, whether individual, corporate, associate
4   or otherwise, are unknown to Simon, who therefore sues these
5   defendants by such fictitious names.  Simon will amend this
6   complaint to show the true names and capacities of those
7   defendants after they have been ascertained.  Simon is informed
8   and believes, and on that basis alleges, that each of the
9   fictitiously-named defendants is responsible in some manner for
10  the occurrences alleged in this complaint and that Simon's
11  damages as alleged in this complaint were proximately caused by
12  the acts or omissions of such defendants.

13      9.   Simon is informed and believes, and on that basis
14  alleges, that at all times material hereto, each defendant was
15  the agent, servant, employee, hireling, representative and
16  associate of each of the other defendants, and was acting within
17  the course and scope of said agency and employment, with a mutual
18  and common purpose for the direct and indirect benefit of each of
19  their co-defendants, and in doing the things and acts complained
20  of were acting with the full knowledge, consent, ratification and
21  approval of each of their co-defendants.

22                      **NATURE OF THE DISPUTE**

23      10.  Simon is informed and believes, and on that basis
24  alleges, that Wash Depot is a private company that was formed in
25  1996.  Wash Depot is in the business of managing, owning and
26  leasing car wash facilities.

27      11.  Simon is informed and believes, and on that basis
28  alleges, that beginning in 1996, David Smith and Andrew Smith

1 (collectively, the "Smiths") hatched a scheme to fraudulently
2 solicit funds for their company, Wash Depot, because they were
3 desperate to keep the company operating and to pay their salaries
4 and expenses. The only way in which they could raise funds for
5 operations was through material misrepresentations, omissions and
6 concealments to extract money from private individuals who were
7 unaware of the true financial status of Wash Depot.

8      12.  Simon is informed and believes, and on that basis,
9 alleges, that as part of the Smiths' scheme, Wash Depot and the
10 Smiths recruited Dominico, who was then working for The Boston
11 Group.  The Smiths asked Dominico to assist Wash Depot in setting
12 up a private placement offering through which the Smiths could
13 solicit unwary investors.  Dominico, as a result of his
14 participation, was to receive brokers' fees and other financial
15 inducements, including shares in Wash Depot.  Dominico served as
16 Wash Depot's agent and representative in connection with Wash
17 Depot's solicitations to Simon.

18      13.  Through mutual business contacts, Simon was first
19 introduced to David Smith at or about the end of 1995.  Soon
20 after meeting Simon, David Smith introduced Simon to Dominico.
21 David Smith represented that Dominico was a successful broker and
22 could assist Simon in making investments in private companies.
23 David Smith further represented that he had obtained substantial
24 profits through Dominico, who was his personal broker.

25      14.  At or about the beginning of 1996, Dominico began
26 contacting Simon regarding various investments.  Relying on
27 Dominico and his advice, Simon made several small investments
28 through Dominico.

4

COMPLAINT

2632.2:97142.1

15. In or about the middle of 1996, having garnered Simon's trust, Dominico began recommending that Simon invest in Wash Depot. Dominico stated that The Boston Group was the selling agent on a private placement of stock by Wash Depot. To induce Simon to invest, in numerous conversations throughout 1996, Dominico stated that Wash Depot was financially healthy, that David Smith was a successful businessman and that Wash Depot was preparing for an initial public offering of its stock that would be completed in months. Dominico repeatedly represented that David Smith had already invested $7 million of his own money into Wash Depot. Dominico's representations to Simon were made in face-to-face meetings when Simon was in California and during numerous telephone conversations when Simon was in New York.

16. During the last few months of 1996, Simon met with David Smith in New York. During this time period, Simon also had telephone conversations with David Smith while Simon was in New York and David Smith was in California. During this meeting and these telephone conversations, David Smith again told Simon that Wash Depot was offering a private placement of its stock and that this was an opportunity for Simon to make large profits. David Smith further represented, among other things, that:

(a) Wash Depot would be offering its stock to the public within six months in an initial public offering that was being managed by Robertson Stephens and at a price of at least $18 per share;

(b) Wash Depot intended to purchase one new car wash operation, as well as the underlying land, per day going forward and had the financial ability to do so;

5

2632.2:97142.1

1   the fact that his "investment" in Wash Depot was, in reality, an

2   exchange of interest between Wash Depot and another company that

3   he and his family owned;

4         (c)  Wash Depot did not have the financial ability to

5   purchase one car wash a day and, in any event, would need to

6   obtain substantial additional financing to do so; and

7         (d)  Wash Depot did not and could not maintain a

8   conservative debt-equity ratio and would need to borrow

9   additional funds heavily to sustain its operations.

10      20.  The Smiths and Dominico further concealed the fact that

11  Wash Depot had initially attempted to conduct the private

12  offering through a different broker, who had refused to complete

13  and offering and had filed suit against Wash Depot.  The Smiths

14  and Dominico concealed the reasons why the initial broker had

15  refused to complete the offering and the manner in which Dominico

16  and The Boston Group became the selling agent.

17      21.  In reliance on the representations made by Dominico,

18  David Smith and Andrew Smith, as alleged in paragraphs 16, 17,

19  and 18, Simon wired an $500,000 to Wash Depot on March 10, 1997

20  in return for shares of Wash Depot.

21      22.  In order to induce further investments from Simon, from

22  March 1997 to November 1997, David Smith and Dominico continued

23  to represent that Wash Depot was operating in accordance with the

24  representations previously made by David Smith and Dominico, as

25  alleged in paragraphs 16 and 18.  David Smith and Dominico

26  further represented that the reason they were soliciting

27  additional monies from Simon was to give him an opportunity to

28  make additional profits and that the underwriter was conducting

1 due diligence on Wash Depot in preparation for an initial public

2 offering that would now be priced at $25 per share.  Such

3 representations were made separately by David Smith and Dominico

4 during telephone conversations with Simon while David Smith and

5 Dominico were in California and Simon was in New York.

6     23.  The representations made by David Smith and Dominico,

7 as alleged in paragraphs 16, 18 and 22, continued to be material

8 and false and to conceal the material facts set forth in

9 paragraph 19.  These representations were also material and false

10 and concealed material facts inasmuch as:

11         (a)  The true reason Wash Depot needed additional

12 monies from Simon was because it was losing tremendous amounts of

13 money;

14         (b)  Wash Depot still had failed to obtain an

15 underwriter for its supposed initial public offering;

16         (c)  David Smith had not invested an additional $6

17 million, or any money, as he had previously represented he would;

18         (d)  Wash Depot was not buying a car wash a day;

19         (e)  Wash Depot was already borrowing money from banks

20 to fund operations;

21         (f)  Any additional financing from Simon and other

22 private investors would merely prolong the operations of the

23 struggling Wash Depot and would not be sufficient to allow Wash

24 Depot to become profitable; and

25         (g)  Simon's prior investments had already diminished

26 in value given the current financial status of the company.

27     24.  David Smith and Dominico failed to disclose the facts

28 set forth in paragraphs 19 and 23 in order to lull Simon and

8

COMPLAINT

1 conceal the fraud that they were perpetrating.

2     25. In reliance on the representations set forth in
3 paragraphs 16, 17, 18 and 22 above, Simon wired an additional
4 $500,000 to Wash Depot on November 20, 1997 in return for shares
5 of Wash Depot.

6     26. Between November 1997 and February 1998, Simon had
7 numerous conversations over the telephone with David Smith and
8 Dominico while David Smith and Dominico were in California and
9 Simon was in New York. During those conversations, David Smith
10 and Dominico represented that Wash Depot was operating
11 successfully and in accordance with their prior representations,
12 as described in paragraphs 16 and 22. These representations
13 continued to be material and false and to conceal material facts.

14     27. On at least three occasions between November 1997 and
15 February 1998, during telephone conversations while Dominico was
16 in California and Simon was in New York, Simon asked Dominico
17 again if David Smith had previously invested $7 million in Wash
18 Depot and whether David Smith had invested an additional $6
19 million as he had stated he would do. To conceal the fraudulent
20 scheme and to induce additional investments from Simon, Dominico
21 told Smith, on those occasions, that he had verified that David
22 Smith had initially invested $7 million in Wash Depot and an
23 additional $6 million as had been represented. The
24 representations by Dominico continued to be material and false
25 and to conceal material facts.

26     28. On November 25, 1997, Chieftain LLC obtained 80,000
27 shares of Wash Depot. Dominico concealed from Simon that he had
28 an interest in Chieftain LLC.

1       29.   On several occasions between November 1997 and February
2   1998, during telephone conversations while David Smith was in
3   California and Simon was in New York, Simon asked David Smith as
4   to the why the initial public offering had not yet been
5   completed.   To conceal the fraudulent scheme and to induce
6   additional investments from Simon, David Smith represented to
7   Simon that Robertson Stephens was not pricing Wash Depot at a
8   fair price and that Wash Depot had been forced to obtain a new
9   underwriter.   David Smith represented that, by obtaining a new
10  underwriter and demanding a higher initial public offering price,
11  Simon's shares would be worth more.   Simon is informed and
12  believes, and on that basis alleges, that these representations
13  were material and false and concealed material information
14  inasmuch as the true reason why Wash Depot had been forced to
15  obtain a new underwriter was because Robertson Stephens had
16  declined to proceed with the offering.

17      30.   In or about the first week of February 1998, Simon also
18  had a meeting with Andrew Smith in New York City.   At that
19  meeting, Andrew Smith stated that Wash Depot was doing so well
20  that it would be offered to the public at between $32 to $50 per
21  share.   Andrew Smith's representations were material and false
22  and concealed material facts inasmuch as Wash Depot was heavily
23  in debt, was losing money and had not been given any indication
24  by any underwriter that its shares could be offered to the
25  public, much less at $32 to $50 per share.

26      31.   In reliance on the representations set forth in
27  paragraphs 16, 17, 18, 22, 26, 27, 29 and 30 above, Simon wired
28  / / /

10

COMPLAINT

2632.2:97142.1

1  to Wash Depot $1,000,000 on February 9, 1998 in return for shares
2  of Wash Depot.

3      32.  After February 9, 1998, David Smith, who was in
4  California, telephoned Simon, who was in New York, and inquired
5  as to whether Simon was interested in purchasing the shares of
6  Wash Depot owned by James F. Moscowitz, a former executive of
7  Wash Depot. David Smith represented, among things, that:

8          (a)  Moscowitz was selling his shares because he
9  needed the proceeds to pay off personal debts; and

10          (b)  Simon's purchase continued to be a good investment
11  in light of David Smith's previous representations, as alleged in
12  paragraphs 16, 22, 25 and 32; and

13          (c)  David Smith had recently signed documents
14  confirming that the initial public offering through the new
15  underwriter would be completed within a few months.

16      33.  David Smith's representations continued to be material
17  and false and to conceal the material information set forth in
18  paragraphs 19, 23 and 29.

19      34.  In reliance on David Smith's representations, on June
20  18, 1998, Simon executed an agreement with Moscowitz pursuant to
21  which Simon purchased the Wash Depot shares owned by Moscowitz
22  for $450,000.

23      35.  In order to conceal their fraud from Simon, starting in
24  August 1998 and continuing throughout 1999, David Smith and
25  Dominico represented that Wash Depot was operating in accordance
26  with their prior representations to Simon, as alleged in
27  paragraphs 16, 18, 22, 26, 27, 29 and 32. David Smith further
28  represented that Wash Depot's initial public offering had been

11

COMPLAINT

2623.2/97142.1

1   further delayed because the new underwriter was not fairly

2   pricing Wash Depot, that yet another underwriter was reviewing

3   Wash Depot and would underwrite the initial public offering at a

4   higher price and that this was not unusual and was being done in

5   the best interests of the investors. Dominico and David Smith

6   made these representations during telephone conversations while

7   they were in California and Simon was in New York.

8                         **FIRST CAUSE OF ACTION**

9                    **(Rescission Based on Fraud**

10                     **Against All Defendants)**

11      36. Simon repeats and realleges each and every allegation

12   contained in each and every paragraph of the Complaint, both

13   prior and subsequent.

14      37. At all times relevant to this Complaint, defendants,

15   individually and in concert, directly and indirectly, conceived

16   of and participated in a scheme and a continuous course of

17   conduct to defraud Simon by engaging in the conduct set forth

18   above. Defendants' wrongful conduct included making

19   misrepresentations of and omitting and concealing material,

20   adverse, non-public information regarding the shares of Wash

21   Depot purchased by Simon and the risks associated with Simon's

22   investment in Wash Depot.

23      38. The misrepresentations alleged in paragraphs 16, 17,

24   18, 22, 26, 27, 29, 30 and 32 were false when made, were known to

25   defendants, and each of them, to be false when made and should

26   have been qualified by the material facts alleged in the above-

27   referenced paragraphs and in paragraphs 20 and 28. The

28   defendants, and each of them, made the misrepresentations and

2632.2:97142.1

1 omitted and concealed material facts with the intent to deceive
2 Simon regarding the value of the Wash Depot shares purchased by
3 Simon and the risks associated with Simon's investment in Wash
4 Depot.

5      39. In making the investments in Wash Depot, Simon
6 reasonably and justifiably relied on defendants' conduct,
7 including their misrepresentations, omissions and concealments of
8 material facts. Simon was unaware of defendants' scheme and
9 defendants' misrepresentations, omissions and concealments of
10 material facts. Had the true facts been known, Simon would not
11 have purchased Wash Depot's shares and made the investments
12 described above.

13      40. Simon intends service of this complaint to serve as
14 notice of rescission of Simon's investments in Wash Depot and
15 hereby offer to restore all consideration furnished by Simon for
16 Wash Depot's shares, on condition that Wash Depot restore to
17 Simon the consideration and other funds furnished by Simon.

18      41. As a direct and proximate result of fraud that has been
19 worked on Simon, Simon is entitled to rescission of Simon's
20 investments in Wash Depot and Simon is entitled to recover all
21 amounts paid by him to Wash Depot, the exact extent of which will
22 be proven at trial.

23                  **SECOND CAUSE OF ACTION**

24       (Damages Based on Fraud Against All Defendants)
25     42. Simon repeats and realleges each and every allegation
26 contained in each and every paragraph of the Complaint, both
27 prior and subsequent.

28     43. As a direct and proximate result of defendants'

2632.7197142.1

1   fraudulent conduct as alleged in the First Cause of Action, Simon

2   has suffered and will continue to suffer damages in an amount to

3   be proven at trial.

4       44.   In acting as alleged above, **defendants** acted

5   oppressively and in wanton and conscious disregard of the rights

6   of Simon.  Accordingly, exemplary damages should therefore be

7   assessed against defendants in an amount which will be sufficient

8   to discourage them from engaging in such conduct in the future.

9                        THIRD CAUSE OF ACTION

10                (Gross Negligence Against All Defendants)

11      45.   Simon repeats and realleges each and every allegation

12  contained in each and every paragraph of the Complaint, both

13  prior and subsequent.

14      46.   At all times relevant to this Complaint, defendants,

15  individually and in concert, directly and indirectly, conceived

16  of and participated in a scheme and a continuous course of

17  conduct to defraud Simon by engaging in the conduct set forth

18  above.  Defendants' wrongful conduct included making

19  misrepresentations of and omitting and concealing material,

20  adverse, non-public information regarding the shares of Wash

21  Depot purchased by Simon and the risks associated with Simon's

22  investment in Wash Depot.  Such wrongful conduct was grossly

23  negligent.

24       47.  The misrepresentations alleged in paragraphs 16, 17,

25  18, 22, 26, 27, 29, 30 and 32 were false when made, were known to

26  defendants, and each of them, to be false when made and should

27  have been qualified by the material facts alleged in the above-

28  referenced paragraphs and in paragraphs 20 and 28.  The

                              14
                           COMPLAINT

1 defendants, and each of them, made the misrepresentations and

2 omitted and concealed material facts with the intent to deceive

3 Simon regarding the value of the Wash Depot shares purchased by

4 Simon and the risks associated with Simon's investment in Wash

5 Depot.

6     48. In making the investments in Wash Depot, Simon

7 reasonably and justifiably relied on defendants' conduct,

8 including their misrepresentations, omissions and concealments of

9 material facts. Simon was unaware of defendants' scheme and

10 defendants' misrepresentations, omissions and concealments of

11 material facts. Had the true facts been known, Simon would not

12 have purchased Wash Depot's shares and made the investments

13 described above.

14     49. As a direct and proximate result of defendants'

15 fraudulent conduct, Simon has suffered and will continue to

16 suffer damages in an amount to be proven at trial.

17     50. In acting as alleged above, defendants acted

18 oppressively and in wanton and conscious disregard of the rights

19 of Simon. Accordingly, exemplary damages should therefore be

20 assessed against defendants in an amount which will be sufficient

21 to discourage them from engaging in such conduct in the future.

22               **FOURTH CAUSE OF ACTION**

23              (Negligent Misrepresentation

24              Against All Defendants)

25     51. Simon repeats and realleges each and every allegation

26 contained in each and every paragraph of the Complaint, both

27 prior and subsequent.

28     52. The misrepresentations of material facts alleged in

paragraphs 16, 17, 18, 22, 26, 27, 29, 30 and 32 were made by defendants without reasonable grounds for believing them to be true and in order to induce Simon to invest in Wash Depot. Defendants intended that Simon would rely upon these representations. Simon was ignorant of the falsity of these representations and justifiably relied upon these representations in deciding to invest funds in Wash Depot.

53. As a direct and proximate result of the misrepresentations made by defendants, Simon has suffered damages in an amount be proven at trial.

### FIFTH CAUSE OF ACTION

(Rescission Based On Constructive Fraud

Against All Defendants)

54. Simon repeats and realleges each and every allegation contained in each and every paragraph of the Complaint, both prior and subsequent.

55. As Simon's broker, Dominico and The Boston Group were fiduciaries of Simon. These defendants thereby owed Simon a fiduciary duty to deal with Simon in good faith. By virtue of Simon's having placed confidence in these defendants' integrity and fidelity, a confidential relationship existed at all times herein mentioned between Dominico and The Boston Group, on the one hand, and Simon, on the other hand.

56. After Simon's first investment in Wash Depot, David Smith and Andrew Smith, by virtue of their positions as director and/or officers of Wash Depot, became Simon's fiduciaries. By virtue of Simon's having placed confidence in the Smiths' integrity and fidelity, a confidential relationship existed

.6

COMPLAINT

2632.2:97142.1

1  between the Smiths and Simon.

2    57.  Defendants knowingly and willfully conspired and agreed
3  to breach their fiduciary duties and violated the relationship of
4  trust and confidence by their wrongful conduct as alleged above.
5  As alleged above, defendants fraudulently induced Simon to
6  purchase shares of Wash Depot for the purpose of enabling
7  defendants to secure for their own personal benefit certain
8  profits and advantages.  Simon purchased these shares based on
9  the representations of defendants and because of Simon's trust
10 and confidence in defendants.  Defendants failed to fully
11 disclose all the facts of the transaction to Simon and made
12 misrepresentations, as alleged above in paragraphs 16, 17, 18,
13 20, 22, 26, 27, 28, 29, 30 and 32.  Simon would not have invested
14 in Wash Depot if he had known that the facts were not as they
15 were represented to him.

16    58.  Because Simon's consent was obtained through
17 constructive fraud as alleged herein, Simon is entitled to
18 rescission of their investments in Wash Depot.

19    59.  Simon intends service of this complaint to serve as
20 notice of rescission of Simon's investments in Wash Depot and
21 hereby offer to restore all consideration furnished by Simon for
22 Wash Depot's shares, on condition that Wash Depot restore to
23 Simon the consideration and other funds furnished by Simon.

24    60.  As a direct and proximate result of the breaches of
25 fiduciary duty by defendants and the resulting fraud that has
26 been worked on Simon, Simon is entitled to rescission of Simon's
27 investments in Wash Depot and Simon is entitled to recover all
28 amounts paid by them to Wash Depot, the exact extent of which

2432.2:97142.1

1   will be proven at trial.

2                    <u>SIXTH CAUSE OF ACTION</u>

3               (Damages Based On Constructive Fraud

4                    Against All Defendants)

5       61. Simon repeats and realleges each and every allegation

6   contained in each and every paragraph of the Complaint, both

7   prior and subsequent.

8       62. As a direct and proximate result of the breaches of

9   fiduciary duties by defendants and the resulting fraud that has

10   been worked on Simon as alleged in the Fifth Cause of Action,

11   Simon has suffered and will continue to suffer damages, the full

12   amount to be proven at trial.

13       63. In doing the things and acts alleged herein, defendants

14   acted with oppression, fraud and malice and with a conscious

15   disregard of the rights of Simon, such that punitive and

16   exemplary damages should be awarded.

17                  <u>SEVENTH CAUSE OF ACTION</u>

18                 (Breach of Fiduciary Duty

19                   Against All Defendants)

20       64. Simon repeats and realleges each and every allegation

21   contained in each and every paragraph of the Complaint, both

22   prior and subsequent.

23       65. As Simon's broker, Dominico and The Boston Group were

24   fiduciaries of Simon. These defendants thereby owed Simon a

25   fiduciary duty to deal with Simon in good faith. By virtue of

26   Simon's having placed confidence in these defendants' integrity

27   and fidelity, a confidential relationship existed at all times

28   herein mentioned between Dominico and The Boston Group, on the

2632.2:97142.1

1 | one hand, and Simon, on the other hand.

2 |     66. After Simon's first investment in Wash Depot, David
3 | Smith and Andrew Smith, by virtue of their positions as directors
4 | and/or officers of Wash Depot, became Simon's fiduciaries. By
5 | virtue of Simon's having placed confidence in the Smiths'
6 | integrity and fidelity, a confidential relationship existed
7 | between the Smiths and Simon.

8 |     67. Among the fiduciary duties that defendants owed to
9 | Simon was the duty to make full and accurate disclosure of
10 | material facts, to avoid conflicts of interest when advising
11 | Simon, to exercise care, skill and diligence in advising Simon
12 | and to give Simon all relevant information regarding his
13 | investments in Wash Depot, including complete and accurate
14 | information concerning investment risks and other material
15 | considerations involved in the purchasing and holding of such
16 | securities.

17 |     68. Defendants breached their fiduciary duties by making
18 | misrepresentations, by omitting and concealing material
19 | information and by pursuing their own interests ahead of and at
20 | the expense of Simon's interests.

21 |     69. As a direct and proximate result of defendants'
22 | conduct, Simon has suffered and will continue to suffer damages
23 | in an amount to be proven at trial.

24 |     70. Defendants acted fraudulently, maliciously,
25 | oppressively and in conscious disregard of Simon's rights. As a
26 | direct consequence thereof, Simon is entitled to recover punitive
27 | damages from defendants.

28 | / / /

19
COMPLAINT

## EIGHTH CAUSE OF ACTION

### (Negligence Against All Defendants)

71. Simon repeats and realleges each and every allegation contained in each and every paragraph of the Complaint, both prior and subsequent.

72. At all relevant times, David Smith and Andrew Smith were directors and officers of Wash. Depot. At all relevant times, Dominico was Simon's broker.

73. By virtue of these positions, defendants owed Simon a duty to perform their duties in good faith and with the care that an ordinary prudent person in a like position would have exercised under similar circumstances.

74. By engaging in the wrongful conduct set forth above, including, among other things, failing to discover and disclose the scheme devised and implemented by defendants and by making and/or endorsing the fraudulent misrepresentations, omissions and/or concealments alleged in paragraphs 16, 17, 18, 20, 22, 26, 27, 28, 29, 30 and 32 (as a result of their negligent failure to discovery the fraudulent nature of these representations, omissions and/or concealments), defendants breached their duty of care to Simon.

75. Defendants are liable in that, among other things, they (a) directly or indirectly authorized, consented to or participated in a negligent manner in the wrongful conduct engaged in by defendants and defendants set forth above; and/or (b) were negligent in their actions relating to the solicitation of Simon's investments.

76. As a direct and proximate result of defendants' breach

20

COMPLAINT

2632.3;97142.1

1   of duty to exercise due care, Simon has suffered and will
2   continue to suffer damages in an amount to be proven at trial.

3                 **NINTH CAUSE OF ACTION**

4         (Violation Of California Corporations Code § 25401

5                Against All Defendants)

6      77. Simon repeats and realleges each and every allegation
7   contained in each and every paragraph of the Complaint, both
8   prior and subsequent.

9      78. Defendants, and each of them, are persons selling or
10  offering for sale the securities purchased by Simon.

11     79. At all times relevant to this Complaint, defendants,
12  individually and in concert, directly and indirectly, devised and
13  participated in a fraudulent scheme and a continuous course of
14  conduct the purpose of inducing Simon to purchase securities sold
15  by them or entities owned or controlled by them, by engaging in
16  the wrongful conduct set forth above

17     80. The misrepresentations, omissions and concealments of
18  material facts alleged in paragraphs 16, 17, 18, 20, 22, 26, 27,
19  28, 29, 30 and 32 were false and misleading when made, and the
20  defendants, and each of them, knew or had reasonable ground to
21  believe that these statements, omissions and/or concealments were
22  false or misleading. The defendants, and each of them, aided and
23  abetted, encouraged and rendered substantial assistance in
24  accomplishing the wrongful conduct alleged herein, or as
25  principals, officers and/or agents, knew or had reason to know of
26  such wrongful conduct. In doing so, each of the defendants acted
27  with knowledge of, or in reckless disregard of, the wrongful
28  nature of the conduct aided and abetted. Each of the defendants

COMPLAINT

2632.2:97142.1

1  realized that its conduct would substantially assist the
2  accomplishment of the wrong which they aided and abetted.

3      81.  The wrongful conduct of defendants, as set forth above,
4  constitutes violations of § 25401 of the California Corporations
5  Code.

6      82.  As a result of defendants' violations of § 25401 of
7  California Corporations Code, pursuant to § 25501 of the
8  California Corporations Code, Simon is entitled to rescission of
9  the transactions pursuant to which Simon purchased shares in Wash
10  Depot.

11                    **TENTH CAUSE OF ACTION**

12              (Violation of 18 U.S.C. § 1962(a)(RICO)

13                    Against All Defendants)

14      83.  Simon repeats and realleges each and every allegation
15  contained in each and every paragraph of the Complaint, both
16  prior and subsequent.

17      84.  Beginning in 1996 and continuing until at least June
18  1998, in furtherance of and for the purpose of executing the
19  above-described scheme to defraud and to obtain monies from Simon
20  and other investors, defendants, on numerous occasions, used and
21  caused to be used mail depositories of the United States Postal
22  Service by both placing and causing to be placed letters and
23  other mailable matter in the depositories.  Each such use of the
24  mails in connection with the above-described scheme to defraud
25  constitutes a separate and distinct violation of 18 U.S.C. §
26  1341.

27      85.  Beginning in 1996 and continuing until at least June
28  1998, in furtherance of and for the purpose of executing the

2632.2:97142.1

1 │ above-described scheme to defraud and to obtain monies from Simon
2 │ and other investors, defendants, on numerous occasions, used and
3 │ caused to be used wire communications in interstate and foreign
4 │ commerce, by both making and causing to be made wire
5 │ communications.  Each such use of wire communications in
6 │ connection with the above-described scheme to defraud constitutes
7 │ a separate and distinct violation of 18 U.S.C. § 1343.

8 │     86.  Beginning in 1996 and continuing until at least June
9 │ 1998, defendants repeatedly engaged in acts in violation of 18
10 │ U.S.C. §§ 1341 and 1343, used the United states mails as well as
11 │ wire and other communications in interstate commerce and thereby
12 │ continually engaged in "racketeering activity" within the meaning
13 │ of 18 U.S.C. § 1961(1)(B) in the course of the described unlawful
14 │ scheme.

15 │     87.  Defendants engaged in the following acts of mail fraud
16 │ and wire fraud:

17 │     DATE                     DESCRIPTION

18 │     February 19, 1997      $100,000 wire to Wash Depot.
19 │     March 10, 1997         $500,000 wire to Wash Depot.
20 │     November 20, 1997     $500,000 wire to Wash Depot.
21 │     February 9, 1998      $1,000,000 wire to Wash Depot.
22 │     June 12, 1998        $450,000 wire to James F. Moscowitz.
23 │     April 27, 1999       Letter from David T. Smith.

24 │     88.  In addition, defendants engaged in wire fraud by using
25 │ telephone lines to fraudulently induce Simon to invest in Wash
26 │ Depot, as alleged in paragraphs 15, 16, 18, 22, 26, 27, 29, 32
27 │ and 35 above.

28 │ / / /

2632-2197142-1

1     89.   Each defendant is a "person" as defined in 18 U.S.C. §
2  1961(3).

3     90.   Defendants operated as an association-in-fact apart
4  from the pattern of racketeering activity alleged herein and
5  operated as a separate enterprise engaged in foreign and
6  interstate commerce by virtue of its solicitations to sell Wash
7  Depot's stock to out-of-state investors.

8     91.   Defendants' repeated violations of 18 U.S.C. §§ 1341
9  and 1343 extended over a period over several years and involved
10 distinct and independent unlawful acts as described above.  They
11 were neither isolated nor sporadic events, but involved the
12 regular and repeated violation of law to accomplish defendants'
13 desired ends in the course of the continuing business of the
14 enterprise.  Defendants collectively agreed to make, and did
15 make, fraudulent misrepresentations, and agreed to conceal, and
16 did conceal, material facts for the purpose of inducing Simon and
17 other investors to acquire shares in Wash Depot for a price far
18 exceeding its actual value.  These acts were related to each
19 other by virtue of (a) common participants, (b) common victims,
20 (d) common methods of commission through false and misleading
21 misrepresentations and omissions and (d) the common purpose and
22 common result of defrauding Simon and other potential investors
23 and enriching defendants at Simon's expense while concealing
24 defendants' unlawful activities.  As such, this conduct
25 constitutes a pattern of racketeering activity within the meaning
26 of 18 U.S.C. § 1961(5).

27    92.   Defendants were associated with the enterprise and
28 violated or aided in the violation of 18 U.S.C. 1962(a) by

24

2632.2(97142.1

1 directly or indirectly conducting or participating in the conduct
2 of the affairs of the enterprise through a pattern of
3 racketeering activity.

4     93. At the time these fraudulent representations were made,
5 Simon was ignorant of the existence of the facts. Defendants
6 knew that their representations were false and/or that such
7 representations should be qualified by material facts. If Simon
8 had known the true facts, Simon would not have purchased any
9 shares of Wash Depot.

10    94. Simon is informed and believes, and on that basis
11 alleges, that defendants have violated 18 U.S.C. § 1962(a) in
12 that they have derived substantial proceeds from the above-
13 referenced pattern of racketeering activity and have invested
14 such proceeds in the operations of an enterprise. Such violation
15 has caused Simon to suffer direct injury, losses and other
16 damages to his business and property. Simon is thus entitled to
17 recover three times his damages, the costs of this suit and his
18 reasonable attorney's fees.

19             **ELEVENTH CAUSE OF ACTION**

20         (Violation of 18 U.S.C. § 1962(c) (RICO)

21            Against All Defendants)

22    95. Simon repeats and realleges each and every allegation
23 contained in each and every paragraph of the Complaint, both
24 prior and subsequent.

25    96. As a result of defendants' wrongful conduct as alleged
26 in the Tenth Cause of Action, defendants have violated 18 U.S.C.
27 § 1962(c) in that they have conducted and participated, both
28 directly and indirectly, in the conduct of the affairs of the

2632.2:971:63.1

1 | enterprise through the pattern of racketeering activity described
2 | herein.  Such violation has caused Simon to suffer direct injury,
3 | losses and other damages to their business and property.  Simon
4 | is thus entitled to recover three times his damages, the costs of
5 | this suit and his reasonable attorney's fees.

6 | TWELFTH CAUSE OF ACTION

7 | (Violation of 18 U.S.C. § 1962(d) (RICO)

8 | Against All Defendants)

9 |       97.  Simon repeats and realleges each and every allegation
10 | contained in each and every paragraph of the Complaint, both
11 | prior and subsequent.

12 |       98.  Defendants conspired to violate 18 U.S.C. §§ 1962(a).
13 | Specifically, defendants conspired to derive substantial proceeds
14 | from the above-described pattern of racketeering activity and to
15 | use and invest such proceeds in the operation of Wash Depot.

16 |       99.  Defendants further conspired to violate 18 U.S.C. §
17 | 1962(c).  Specifically, defendants conspired to conduct and to
18 | participate in the affairs of the association-in-fact enterprise
19 | through the pattern of racketeering activity described above.

20 |       100. As a result of these violations, Simon has suffered
21 | damages in their business and property, including loss of the use
22 | of their assets.  Simon is thus entitled to recover three times
23 | his damages, the costs of this suit and his reasonable attorney's
24 | fees.

25 | / / /
26 | / / /
27 | / / /
28 | / / /

26

2632.2:97147.1

1

## THIRTEENTH CAUSE OF ACTION

2    (Violation of California Business & Professions Code § 17200

3         Against Defendants The Boston Group And Wash Depot)

4    101. Simon repeats and realleges each and every allegation
5 contained in each and every paragraph of the Complaint, both
6 prior and subsequent.

7    102. The repeated failure by Wash Depot to provide truthful
8 information during its private placement offerings constitutes an
9 unfair business act in violation of § 17200 of California's
10 Business and Professions Code. Such practices are particularly
11 egregious in light of the fact that Wash Depot is a private
12 company and did not register its securities with the appropriate
13 regulatory authorities. Under such circumstances, Wash Depot
14 must provide truthful information to its private investors, who
15 have no other protections under the law.

16    103. The repeated failure of The Boston Group to provide
17 truthful information to its customers regarding the investments
18 that it was promoting constitutes an unfair business act in
19 violation of § 17200 of California's Business and Professions
20 Code. Acting simultaneously as the selling agent for Wash Depot
21 on its private placement offerings and the broker for private
22 investors, The Boston Group should have conducted adequate due
23 diligence on Wash Depot and refrained from making or endorsing
24 any unverified or inaccurate representations regarding Wash
25 Depot.

26    104. The business practices of defendants described over are
27 oppressive, unscrupulous, unethical and are intended to cause
28 substantial injury to consumers such as Simon. Like many other

27

COMPLAINT

2632.2197142.1



**WASH DEPOT HOLDINGS, INC.**
1711 Broadway – Saugus – Massachusetts – 01906
(781) 231-9300 – fax: (781) 231-9399

To: Rick Scarola

From: Greg Anderson

(212) 757 0465

1 | private investors in Wash Depot, Simon was victim of these
2 | practices.

3 | 105. Because defendants' unfair and/or fraudulent business
4 | acts are deceptive and harmful to the consuming public, Wash
5 | Depot and The Boston Group should be required to reimburse Simon
6 | for all amounts he invested in Wash Depot and for all costs and
7 | expenses incurred by Simon in connection and all attorneys' fees
8 | and costs expended in prosecuting this action.

9 | ### FOURTEENTH CAUSE OF ACTION

10 | (Civil Conspiracy Against All Defendants)

11 | 106. Simon repeats and realleges each and every allegation
12 | contained in each and every paragraph of the Complaint, both
13 | prior and subsequent.

14 | 107. As alleged above, beginning in 1996, defendants
15 | knowingly and willfully conspired and agreed to conspire to
16 | fraudulently induce private investors to invest in Wash Depot
17 | and, specifically, to obtain funds from Simon.

18 | 108. In furtherance of the conspiracy, defendants committed
19 | the fraudulent acts alleged in paragraphs 16, 17, 18, 20, 22, 26,
20 | 27, 28, 29, 30 and 32. Defendants did knowingly and willfully
21 | conspire and agree among themselves to take each and every
22 | fraudulent act as alleged in this complaint or ratified such
23 | conduct by their acquiescence therein. All conduct alleged
24 | herein is attributed to each and every defendant as having
25 | occurred in furtherance of the conspiracy to fraudulently induce
26 | Simon to invest in Wash Depot.

27 | 109. The conspiracy of defendants is ongoing inasmuch as
28 | defendants have failed, and continue to fail, to provide truthful

28

COMPLAINT

2832.2197142.1

1 | and accurate information regarding Wash Depot to Simon.

2 |       110. As a direct and proximate result of the actions of

3 | defendants, Simon has been damaged in an amount to be determined

4 | at trial.

5 |       111. The acts of defendants as alleged herein were willful,

6 | wanton, malicious and oppressive and were undertaken with the

7 | intent to harm and therefore justify the awarding of punitive

8 | damages in an amount appropriate to defendants' wrongful behavior

9 | and sufficient to deter similar conduct.

10 |                    FIFTEENTH CAUSE OF ACTION

11 |                  (Imposition of a Constructive Trust

12 |                     Against All Defendants)

13 |       112. Simon repeats and realleges each and every allegation

14 | contained in each and every paragraph of the Complaint, both

15 | prior and subsequent.

16 |       113. By virtue of the conduct of defendants as alleged

17 | herein, defendants have been unjustly enriched as a result of

18 | their fraudulent and/or negligent conduct and breaches of

19 | fiduciary duties. As a further result of defendants' conduct as

20 | alleged herein, defendants hold the proceeds from Simon's

21 | investments as a constructive trustee for the benefit of Simon.

22 | Simon is entitled to an order declaring that defendants hold all

23 | funds paid by Simon and the proceeds therefrom in trust for

24 | Simon.

25 |                    SIXTEENTH CAUSE OF ACTION

26 |                  (Accounting Against All Defendants)

27 |       114. Simon repeats and realleges each and every allegation

28 | contained in each and every paragraph of the Complaint, both

2632.2:97142.1

1 | prior and subsequent.

2 | 115. As set forth above, defendants fraudulently induced
3 | investments from Simon. Simon does not know whether the monies
4 | he invested were used for Wash Depot's operations or elsewhere.
5 | Simon is entitled to an accounting to determine what has happened
6 | to the monies he invested.

7 | WHEREFORE, plaintiff Arnold Simon prays for judgment against
8 | defendants as follows:

9 | 1. On the First, Fifth, Ninth and Thirteenth Causes of
10 | Action:

11 | a. For a determination that each of Arnold Simon's
12 | investments in Wash Depot has been rescinded;

13 | b. For an order of restitution of all amounts paid to
14 | defendants by Simon, according to proof.

15 | 2. On the Second, Third, Sixth, Seventh and Fourteenth
16 | Causes of Action:

17 | a. For compensatory damages according to proof; and
18 | b. For punitive and exemplary damages according to
19 | proof.

20 | 3. On the Fourth and Eighth Causes of Action:

21 | a. For compensatory damages according to proof.

22 | 4. On the Tenth through Twelfth Causes of Action:

23 | a. For treble damages according to proof.

24 | 5. On the Fifteenth Cause of Action:

25 | a. For imposition of a constructive trust on the
26 | proceeds of all investments made by Simon in Wash
27 | Depot.

28 | 6. On the Sixteenth of Action:

1    a. For an accounting.

2  7. On All Causes of Action:

3    a. For attorneys' fees as appropriate;

4    b. For costs of suit incurred herein;

5    c. For pre- and post-judgment interest as permitted

6     by law; and

7    d. For such other and further relief as the Court may

8     deem just and proper.

9

10 Dated: October 23, 2000  GARY S. LINCENBERG
            JASON D. KOGAN

11           EKWAN E. RHOW
            BIRD, MARELLA, BOXER & WOLPERT

12           A Professional Corporation

13

14           By: _____

15             EKWAN E. RHOW
            Attorney for plaintiffs

16

17

        <u>DEMAND FOR JURY TRIAL</u>

18

  Plaintiff Arnold Simon hereby demands trial by jury on all

19
issues to which he has a right to a jury trial.

20

21

Dated: October 23, 2000  GARY S. LINCENBERG

22           JASON D. KOGAN
            EKWAN E. RHOW

23           BIRD, MARELLA, BOXER & WOLPERT
            A Professional Corporation

24

25

26           By: _____

27             EKWAN E. RHOW
            Attorney for plaintiffs

28

2632.2:97142.1

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):

EKWAN E. RHOW, SBN 174604
Bird, Marella, Boxer & Wolpert, APC
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067-2561
TELEPHONE NO.: (310) 201-2100   FAX NO.: (310) 201-2100
ATTORNEY FOR (Name): Plaintiff

INSERT NAME OF COURT, JUDICIAL DISTRICT, AND BRANCH COURT, IF ANY:

LOS ANGELES SUPERIOR COURT
CENTRAL DISTRICT

CASE NAME: Simon v. Wash Depot Holdings, Inc., etc., et al.

FOR COURT USE ONLY

**ORIGINAL FILED**

OCT 23 2000

LOS ANGELES
SUPERIOR COURT

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [ ] Limited  [X] Unlimited | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | B C238965  ASSIGNED JUDGE: |

*Please complete all five (5) items below.*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (e.g., discrimination, false arrest) (08)
[X] Defamation (e.g., slander, libel) (13)
[X] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (e.g., legal malpractice) (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)

[ ] Other employment (15)
**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (e.g., money owed, open book accounts) (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (e.g., quiet title) (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)

[ ] Writ of mandate (02)
[ ] Other judicial review (39)
**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Claims involving mass tort (40)
[ ] Securities litigation (28)
[ ] Toxic tort/Environmental (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (e.g., sister state, foreign, out-of-county abstracts) (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [X] is not complex under rule 1800 of the California Rules of Court. If case is complex, mark the factor requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. [ ] Coordination and related actions pending in one or more court in other counties, states or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial post-disposition judicial disposition

3. Type of remedies sought (check all that apply):
   a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [X] punitive

4. Number of causes of action (specify): 16

5. This case [ ] is [X] is not a class action suit.

Date: October 23, 2000

EKWAN E. RHOW
(TYPE OR PRINT NAME)

▶  _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate, Family, or Welfare and Institutions Code). (Cal. Rules of Court, rule 982.2.)
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a complex case, this cover sheet shall be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
982.2(b)(1) [Rev. January 1, 2000]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 982.2, 1800 et seq.
Standards of Judicial Administration

| SHORT TITLE: Simon v. Wash Depot Holdings, Inc., etc., et al. | CASE NUMBER |
|---|---|
| | C228965 |

## CIVIL CASE COVER SHEET ADDENDUM
### CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO DISTRICT

| This form is required in all new civil case filings in the Los Angeles Superior Court |
|---|

I.  Check the types of hearing and fill in the estimated length of hearing expected for this case:

[X] JURY OR [ ] NON-JURY AND CLASS ACTION?  [ ] YES [X] NO  TIME ESTIMATED FOR TRIAL _____ [4] HOURS/ [X] DAYS

II.  Select the correct district (4 steps):

1  After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column 1, the Civil Case Cover Sheet case type you selected.

2  Check one Superior Court type of action in Column 2 which best describes the nature of this case.

3  In Column 3 below, circle the reason for your choice of district that applies to the type of action you have checked.

| Applicable Reasons for Choosing District (See Column 3 below) |
|---|

1.  Class Actions must be filed in Central District.
2.  May be filed in Central (Non-PI/PD/Out-of-county PI/PD)
3.  District where cause of action arose.
4.  District where injury, death or damage occurred.
5.  District where performance required or defendant resides.
6.  District where property is located.
7.  District where petitioner resides.
8.  District where defendant/respondent functions wholly therein.
9.  District where one or more of the parties reside.
10. District where Labor Commissioner Office located.

4  Fill in the information requested on page 4 in item III; complete item IV.  Sign the certificate.

| | -1-<br>Civil Case Cover Sheet Category No. | -2-<br>Type of Action<br>(Check only one) | -3-<br>Applicable Reasons -<br>See Above |
|---|---|---|---|
| Auto Tort | Auto (22) | [ ] A7100  Motor Vehicle - Personal Injury/Property Dam./Wrongful Death<br>Is this an uninsured motorist case?  [ ] Yes  [ ] No | 1., 2., 4. |
| Other PI/PD/WD Tort | Asbestos (04) | [ ] A6070  Asbestos Property Damage | 2. |
| | | [ ] A722·  Asbestosis - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | [ ] A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | [ ] A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | [ ] A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other PI/PD/WD (23) | [ ] A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | [ ] A7230  Intentional PI/PD/WD (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | [ ] A7220  Other Personal Injury/Property Dam./Wrongful Death | 1., 2., 4. |
| Non-PI/PD/WD Tort | Business Tort (07) | [ ] A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | [ ] A6005  Civil Rights | 1., 2., 3. |
| | Defamation (13) | [ ] A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | [X] A6013  Fraud (no contract) | 1., 2., 3. |
| | Intellectual Property (19) | [ ] A6016  Intellectual Property | 2., 3. |
| | Prof. Negligence (25) | [ ] A6017  Legal Malpractice | 1., 2., 3. |
| | | [ ] A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |

982.2(b)(1)A   75c134
R2/0)

CIVIL CASE COVER SHEET ADDENDUM
CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO DISTRICT

| SHORT TITLE. Simon v. Wash Depot Holdings, Inc., etc., et al. | CASE NUMBER |
|---|---|

-4-

III. Choose the district: Enter the address of the accident, party residence or place of business, required performance, or other circumstance you have circled in Column 3 as the proper reason for filing in the district you selected.

| REASON: CHECK THE NUMBER YOU CIRCLED IN 3 WHICH APPLIES IN THIS CASE<br>☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>2049 Century Park East, 30th Floor |
|---|---|
| CITY:<br>Los Angeles | STATE<br>Calif. | ZIP CODE:<br>90067 | Los Angeles, California  90067 |

IV. Certificate/Declaration of Assignment: The undersigned hereby certifies and declares that the above entitled matter is properly filed for assignment to the <u>Central</u> District of the Los Angeles Superior Court under Section 392 et seq., Code of Civil Procedure and Rule 2(b), (c) and (d) of this court for the reason checked above. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and this declaration was executed on <u>October 23, 2000</u> at <u>Los Angeles</u> California.
　　　　　　　　　　　　　　　(date)　　　　　　　　　　　　　　(city)

　　　　　　　　　　　　　　　　　　　　　　　　　　(SIGNATURE OF ATTORNEY/FILING PARTY)
　　　　　　　　　　　　　　　　　　　　　　EKWAN E. RHOW

## New Civil Case Filing Instructions

This addendum form is required so that the court can assign your case to the correct court district for filing and hearing. It satisfies the requirement for a certificate as to reasons for authorizing filing in the district, as set forth in Los Angeles Superior Court Local Rule 2 (d). It must be completed and submitted to the court along with the Civil Case Cover Sheet and the original Complaint or Petition in ALL civil cases filed in any district (including the Central District) of the Los Angeles County Superior Court.

---

**PLEASE HAVE THE FOLLOWING DOCUMENTS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

---

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk (Summons forms available at the Forms Counter).

3. Civil Case Cover Sheet form required by California Rule of Court 982.2(b)(1), completely filled out (Cover Sheet forms available at the Forms Counter).

4. This "Addendum to Civil Case Cover Sheet" form (Superior Court Form Number 982.2(b)(1)A, revised 7/99), completely filled out and submitted with the Civil Case Cover Sheet. *

5. Payment in full of the filing fee or an Order of the Court waiving payment of filing fees in forma pauperis (fee waiver application forms available at the Filing Window).

6. In case of a plaintiff or petitioner who is a minor under 18 years of age, an Order of the Court appointing an adult as a guardian ad litem to act on behalf of the minor (Guardian ad Litem Application and Order forms available at the Forms Counter).

7. Additional copies of documents presented for endorsement by the Clerk and return to you.

* With the exception of cases concerning personal injury (including wrongful death) and property damage occurring in this County, Labor Commissioner Appeals, and those types of actions required to be filed in the Central District by Local Court Rule 2(b), all civil actions may be optionally filed either in the Central District or in whichever other district the rule would allow them to be filed. When a party elects to file an action in Central District which would also be eligible for filing in one or more of the other districts, this form must still be submitted with location and assignment information completed.

---

**LOS ANGELES SUPERIOR COURT ■ LOS ANGELES MUNICIPAL COURT**
**CIVIL COORDINATION**

CASE NUMBER _____

B C238965

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below.  The indicated judge is participating in the Los Angele
Superior and Municipal Courts' Central Civil Consolidated Calendar Program, which is operating pursuant to state laws and rule
pertaining to the coordination of trial courts in the State of California. There is additional information on the reverse side of this form

| ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|
| Hon. Judith M. Ashmann | 31 | 407 | | Hon. Richard C. Hubbell | 62 | 600 |
| Hon. Elihu M. Berle | 42 | 416 | | Hon. Morris B. Jones | 48 | 506 |
| Hon. Paul Boland | 36 | 410 | | Hon. Brett C. Klein | 77 | 732 |
| Hon. Soussan Bruguera | 71 | 729 | | Hon. Marlene A. Kristovich | 18 | 308 |
| Hon. Susan Bryant-Deason | 52 | 510 | | Hon. Owen Lee Kwong | 49 | 509 |
| Hon. Alan Buckner | 14 | 300 | | Hon. Marvin Lager | 38 | 412 |
| Hon. Ronald E. Cappai | 23 | 315 | | Hon. Malcolm H. Mackey | 84 | 835 |
| Hon. Lawrence W. Crispo | 58 | 518 | | Hon. Jon M. Mayeda | 72 | 731 |
| Hon. J. Stephen Czuleger | 50 | 508 | | Hon. Barbara A. Meiers | 12 | 636 |
| Hon. Ralph W. Dau | 57 | 517 | | Hon. David L. Minning | 61 | 632 |
| Hon. Robert A. Dukes | 25 | 317 | | Hon. Aurelio Munoz | 47 | 507 |
| Hon. James R. Dunn | 26 | 316 | | Hon. Rodney E. Nelson | 46 | 500 |
| Hon. Reginald A. Dunn | 44 | 418 | | Hon. Gregory O'Brien | 21 | 313 |
| Comr. Emilie Elias | 3 | 224 | | Hon. S. James Otero | 68 | 617 |
| Hon. Irving Feffer | 51 | 511 | | Hon. Victor H. Person | 39 | 415 |
| Hon. Edward A. Ferns | 69 | 621 | | Hon. Mel Recana | 45 | 632 |
| Hon. Madeleine Flier | 37 | 413 | | Hon. Frances Rothschild | 28 | 318 |
| Hon. Kenneth R. Freeman | 64 | 601 | | Hon. Cesar C. Sarmiento | 55 | 515 |
| Hon. Haley J. Fromholz | 20 | 310 | | Hon. John P. Shook | 53 | 513 |
| Hon. Richard Fruin | 15 | 307 | | Hon. Ronald Sohigian | 41 | 417 |
| Hon. Paul Gutman | 33 | 409 | | Hon. S. Patricia Spear | 13 | 630 |
| Hon. Roy L. Hart | 10 | 631 | | Hon. Fumiko Wasserman | 16 | 306 |
| Hon. Robert L. Hess | 24 | 314 | | Hon. Alexander Williams III | 35 | 411 |
| Hon. Ernest Hiroshige | 54 | 512 | | Hon David A. Workman | 40 | 414 |
| Hon. Marilyn L. Hoffman | 78 | 730 | | OTHER | | |
| Hon. David Horowitz | 30 | 400 | | | | |

(Revised 10/01/00)

_____ , DEPUTY CLERK

## LOS ANGELES SUPERIOR COURT • LOS ANGELES MUNICIPAL COURT
## CIVIL COORDINATION

### CASE NUMBER _____

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT                 II C238965

Your case is assigned for all purposes to the judicial officer indicated below.  The indicated judge is participating in the Los Angele Superior and Municipal Courts' Central Civil Consolidated Calendar Program, which is operating pursuant to state laws and rule pertaining to the coordination of trial courts in the State of California.  There is additional information on the reverse side of this form

| ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|
| Hon. Judith M. Ashmann | 31 | 407 |
| Hon. Elihu M. Berle | 42 | 416 |
| Hon. Paul Boland | 36 | 410 |
| Hon. Soussan Bruguera | 71 | 729 |
| Hon. Susan Bryant-Deason | 52 | 510 |
| Hon. Alan Buckner | 14 | 300 |
| Hon. Ronald E. Cappai | 23 | 315 |
| Hon. Lawrence W. Crispo | 58 | 516 |
| Hon. J. Stephen Czuleger | 50 | 508 |
| Hon. Ralph W. Dau | 57 | 517 |
| Hon. Robert A. Dukes | 25 | 317 |
| Hon. James R. Dunn | 26 | 316 |
| Hon. Reginald A. Dunn | 44 | 418 |
| Comr. Emilie Elias | 3 | 224 |
| Hon. Irving Feffer | 51 | 511 |
| Hon. Edward A. Ferns | 69 | 621 |
| Hon. Madeleine Flier | 37 | 413 |
| Hon. Kenneth R. Freeman | 64 | 601 |
| Hon. Haley J. Fromholz | 20 | 310 |
| Hon. Richard Fruin | 15 | 307 |
| Hon. Paul Gutman | 33 | 409 |
| Hon. Ray L. Hart | 10 | 631 |
| Hon. Robert L. Hess | 24 | 314 |
| Hon. Ernest Hiroshige | 54 | 512 |
| Hon. Marilyn L. Hoffman | 78 | 730 |
| Hon. David Horowitz | 30 | 400 |

| ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|
| Hon. Richard C. Hubbell | 62 | 600 |
| Hon. Morris B. Jones | 46 | 506 |
| Hon. Brett C. Klein | 77 | 732 |
| Hon. Marlene A. Kristovich | 18 | 308 |
| Hon. Owen Lee Kwong | 49 | 509 |
| Hon. Marvin Lager | 38 | 412 |
| Hon. Malcolm H. Mackey | 84 | 835 |
| Hon. Jon M. Mayeda | 72 | 731 |
| Hon. Barbara A. Meiers | 12 | 636 |
| Hon. David L. Minning | 61 | 632 |
| Hon. Aurelio Munoz | 47 | 507 |
| Hon. Rodney E. Nelson | 46 | 500 |
| Hon. Gregory O'Brien | 21 | 313 |
| Hon. S. James Otero | 68 | 617 |
| Hon. Victor H. Person | 39 | 416 |
| Hon. Mel Recana | 45 | 632 |
| Hon. Frances Rothschild | 28 | 318 |
| Hon. Cesar C. Sarmiento | 55 | 515 |
| Hon. John P. Shook | 53 | 513 |
| Hon. Ronald Sohigian | 41 | 477 |
| Hon. S. Patricia Spear | 13 | 630 |
| Hon. Fumiko Wasserman | 16 | 306 |
| Hon. Alexander Williams III | 35 | 411 |
| Hon David A. Workman | 40 | 414 |
| OTHER | | |
| | | |

(Revised 10/01/00)

_____, DEPUTY CLERK

## LOS ANGELES SUPERIOR COURT ▪ LOS ANGELES MUNICIPAL COURT
### CIVIL COORDINATION

**CASE NUMBER** _____ ᴮ C238965

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below.  The indicated judge is participating in the Los Angele
Superior and Municipal Courts' Central Civil Consolidated Calendar Program, which is operating pursuant to state laws and rule
pertaining to the coordination of trial courts in the State of California.  There is additional information on the reverse side of this form

| ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|
| Hon. Judith M. Ashmann | 31 | 407 | | Hon. Richard C. Hubbell | 52 | 600 |
| Hon. Elihu M. Berle | 42 | 416 | | Hon. Morris B. Jones | 48 | 508 |
| Hon. Paul Boland | 36 | 410 | | Hon. Brett C. Klein | 77 | 732 |
| Hon. Soussan Bruguera | 71 | 729 | | Hon. Marlene A. Kristovich | 18 | 308 |
| Hon. Susan Bryant-Deason | 52 | 510 | | Hon. Owen Lee Kwong | 49 | 509 |
| Hon. Alan Buckner | 14 | 300 | | Hon. Marvin Lager | 38 | 412 |
| Hon. Ronald E. Cappai | 23 | 315 | | Hon. Malcolm H. Mackey | 84 | 835 |
| Hon. Lawrence W. Crispo | 58 | 516 | | Hon. Jon M. Mayeda | 72 | 731 |
| Hon. J. Stephen Czuleger | 50 | 508 | | Hon. Barbara A. Meiers | 12 | 636 |
| Hon. Ralph W. Dau | 57 | 517 | | Hon. David L. Minning | 61 | 632 |
| Hon. Robert A. Dukes | 25 | 317 | | Hon. Aurelio Munoz | 47 | 507 |
| Hon. James R. Dunn | 26 | 316 | | Hon. Rodney E. Nelson | 46 | 500 |
| Hon. Reginald A. Dunn | 44 | 418 | | Hon. Gregory O'Brien | 21 | 313 |
| Comr. Emilie Elias | 3 | 224 | | Hon. S. James Otero | 68 | 617 |
| Hon. Irving Feffer | 51 | 511 | | Hon. Victor H. Person | 39 | 415 |
| Hon. Edward A. Ferns | 69 | 621 | | Hon. Mel Recana | 45 | 632 |
| Hon. Madeleine Flier | 37 | 413 | | Hon. Frances Rothschild | 28 | 318 |
| Hon. Kenneth R. Freeman | 64 | 601 | | Hon. Cesar C. Sarmiento | 55 | 515 |
| Hon. Haley J. Fromholz | 20 | 310 | | Hon. John P. Shook | 53 | 513 |
| Hon. Richard Fruin | 15 | 307 | | Hon. Ronald Sohigian | 41 | 417 |
| Hon. Paul Gutman | 33 | 409 | | Hon. S. Patricia Spear | 13 | 630 |
| Hon. Ray L. Hart | 10 | 631 | | Hon. Fumiko Wasserman | 16 | 306 |
| Hon. Robert L. Hess | 24 | 314 | | Hon. Alexander Williams III | 35 | 411 |
| Hon. Ernest Hiroshige | 54 | 512 | | Hon David A. Workman | 40 | 414 |
| Hon. Marilyn L. Hoffman | 78 | 730 | | OTHER | | |
| Hon. David Horowitz | 30 | 400 | | | | |

(Revised 10/01/00)

_____ , DEPUTY CLERK

Case 2:00-cv-12428-CAS-Mc   Document 1   Filed 11/22/00   Page 46 of 48

ment or resolution. In these cases the parties have the right to return to court for a litigated decision. If the case returns to court, the mediator cannot be called to testify or produce notes or records of the mediation, as the rules of evidence are not the same for mediations as they are for litigation.

Mediators are not necessarily attorneys. However, all mediators, including attorneys, have received training or have the experience required for California law to be mediators for the Courts.

Survey results of participants in mediation consistently demonstrate a high satisfaction rate with both the results of the mediation and with the process itself. Because the resolution is determined by the parties and is not imposed on them, settlements achieved in mediation are upheld easily by the parties, and the agreements reached help to foster future positive relationships.

## Settlement Conferences

The third ADR method is called a settlement conference, and like the other processes, may be mandatory or voluntary. In general, if the settlement conference is mandatory, that is, ordered by the judge, the parties to the dispute and their attorneys will meet with the judge who conducts a conference aimed at negotiating an agreement to settle the dispute rather than going through the formal trial process.

In some cases, the judge will recommend that the settlement conference be held by another judge or with a settlement officer or organization suggested by the judge. Like the other ADR processes, the settlement conference must be held within a time frame set by the Court.

If the judge refers the case to a voluntary settlement conference, the parties are requested to contact the Joint Association Settlement Officer Program (JASOP), which is administered by the Los Angeles County Bar Association Dispute Resolution Services. In this program, a settlement conference is conducted by one or



geles, CA 90012

ties with background sponsored by the Court, matter appropriate. ms one or two settlement the area of practice mediation on participating 74-8913.

Office or by Dispute are volunteers. However, have the option of their own cost. Several rals to mediators

DRS), the nonprofit es County Bar certifies mediators '96-6530);
Source Book
County Bar

an hours of attorneys. ✔ to meet a panel for mediation services attorney ADR services.

## How Much Will It Cost?

Neutrals devote their time to the courts as a part of supporting the judicial system. They do not receive compensation for their time, so there is no fee for the neutral's participation. However, fees for private neutrals selected in the parties' expense can range from $50–$300 per hour.

There are no administrative fees for court-ordered ADR services.

## How Long Does It Take?

The time for an ADR procedure varies depending on the complexity of the case. Most cases require only one meeting to come to a resolution, but some cases may require additional sessions. All of these ADR processes must be completed by a date set by the judge, usually within 90 days of the date on which the judge referred the case to an ADR process.

ADR processes work. They can save time, money, emotional stress and the loss of valued relationships. Isn't it worth at least inquiring about them?



PRODUCED BY THE
L. ANGELES COUNTY COURTS
AND
DISPUTE RESOLUTION SERVICES ...
5/96



# Alternative Dispute Resolution

**P R O G R A M S**

*of the*

## Los Angeles County Courts

LOS ANGELES COUNTY COU

## PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA      )
                                    ) ss

COUNTY OF LOS ANGELES    )

       I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 300 South Grand Avenue, Suite 1400, Los Angeles, California 90071.

       On **November 22, 2000,** I served the foregoing document(s) described as **NOTICE OF REMOVAL OF ACTION AND CIVIL COVER SHEET** on the interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

**Gary S. Lincenberg, Esq.**
**Jason D. Kogan, Esq.**
**Ekwan E. Rhow, Esq.**
Bird, Marella, Boxer & Wolpert
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067

**X**    **BY MAIL**

I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

—    **BY PERSONAL SERVICE:**

     —    By personally delivering copies to the person served.

     —    I delivered such envelope by hand to the office of the addressee pursuant to C.C.P. Section 1011.

—    **STATE**    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

**X**    **FEDERAL**    I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on **November 22, 2000**, at Los Angeles, California.

_____
Jene Mathews

1

## **PROOF OF SERVICE BY MAIL**

2

3

STATE OF CALIFORNIA          )
                                      ) ss
COUNTY OF LOS ANGELES   )

4

5

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 300 South Grand Avenue, Suite 1400, Los Angeles,

6

California 90071.

7

     On **November 22, 2000,** I served the foregoing document(s) described as **NOTICE OF REMOVAL OF ACTION AND CIVIL COVER SHEET** on the interested parties in this action by placing a true copy

8

thereof enclosed in sealed envelopes addressed as follows:

9

10

**Gary S. Lincenberg, Esq.**
**Jason D. Kogan, Esq.**
**Ekwan E. Rhow, Esq.**

11

Bird, Marella, Boxer & Wolpert
1875 Century Park East, 23rd Floor

12

Los Angeles, CA 90067

13

14

**X**     **BY MAIL**

15

I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and

16

processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the

17

ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit

18

for mailing in affidavit.

19

 –     **BY PERSONAL SERVICE:**

20

     –     By personally delivering copies to the person served.

21

     –     I delivered such envelope by hand to the office of the addressee pursuant to C.C.P. Section 1011.

22

 –     **STATE**     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

23

24

**X**     **FEDERAL**     I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

25

Executed on **November 22, 2000**, at Los Angeles, California.

26

27

28

                                 Jene Mathews